and Stevenson Jordan responded to Appeline. Attorney General Gavin, Petitioner Appellant, Mr. Enrico J. Irabelli. Mr. Amir J. were abstained. Mr. Mayor Cali. Thank you.      Thank you. Mr. Mayor Callahan. Thank you. Mr. Mayor Callahan. Thank you. You used up a minute of your time. Pardon me? For whose county? May it please the court. Good morning. My name is Enrico J. Irabelli. I am a member of the Thurman LLP law firm. We represent the appellant in this matter. I am mindful of the court's order that you have read the brief and that you know the facts and I will do my best not to go over them since you've read them. In this case, we had a one-day trial. It was a one-issue trial. And there was really only one set of facts in this case. In December of 2018, the trial court entered an order of temporary maintenance of $2,099 a month. It was a temporary order until further order of the court. The one issue that we went to trial on March 12th was what was going to be the duration of this maintenance. When I said that that's the only issue, there did crop up a second issue because during the time of the trial, Mr. Dorgan divulged for the first time that he had purchased a piece of property for $22,000 in Wisconsin, which we did not know about. The transcript is only 88 pages long and there was some dialogue between Mr. Steele, my partner who was trying the case along with myself as to we had a 237 notice to produce documents of any real estate or any updates. Nevertheless, that's really not an issue before the court today, so one could argue there was a second issue, but the real issue was what was the duration of the maintenance going to be because the court had already found that my client was entitled to maintenance. When I say there was one voice, in reading my brief, you will see that there is no contest. Valerie testified that she was disabled. Before you go on, Mr. Mirabelli, what is the standard of review here for us at the appellate court? I think the standard of review is an abuse of discretion. Is it not against the manifest weight? I think the court's findings of the fact go to the manifest weight of the evidence, but after the court makes certain findings and says I'm going to issue or deny permanent maintenance, I think the denial of permanent maintenance was an abuse of discretion based upon the facts set forth. And that is the standard, but as you know, abuse of discretion is defined as no reasonable person would agree with the ruling of the trial court, which is a pretty significant hurdle. I think it is the most deferential standard to the trial court, clearly. But in this case, and again, I don't think time permits me, this I apologize. And I'm just struggling with the manifest weight and abuse of discretion because the court is going to weigh the factors under 504A. And it's very difficult for the court to weigh the factors or it's very difficult for us to review the weight that the court gives to those factors if the court finds that the witness is incredible or if the court who has the opportunity to observe this witness find that maybe she's not truthful. Speak to that. Certainly. The court did make such a finding. As you know, the court made a finding that  to her finances was poor at best. Right. I don't think Valerie's finances are really relevant to the issue of the duration of maintenance. But interestingly, what I found interesting is the court made no such finding that Valerie's testimony in pages 38 through 42 of the transcript as to her illness, her lupus, her lymphoma, and her multiple sclerosis. She made no finding that that testimony was not credible. And But Counsel, the essence of the trial court's ruling in this case was in fact based upon his finding of her credibility, his determination regarding her credibility. Isn't that correct? At one point, the judge in the opinion that the exact pages gave me, at the very end of the opinion, she makes a ruling that she's not going to grant permanent maintenance because Valerie didn't prove that she is disabled. Valerie didn't prove that she is unable to work in the future. And her finances, her testimony's finances lack credibility. I could argue to the court, but I would lose all of my 15 minutes arguing that where the judge made at least five times, she said, there was no evidence. There was evidence. Valerie testified, this is my affidavit Exhibit 2. All the representations in here are true and accurate. There was evidence as to the fair market value. The judge said there was no evidence as to what car she has. It's right in the affidavit. It's a 2017 Jeep Patriot. We don't know if it's owned or leased, the judge said. It says in the affidavit it's leased. At one point, the judge went outside the record and made a finding when saying that what Valerie's expenses are don't add up. I respectfully disagree because the judge is trying to say, well, how did she buy Stephen a boat for $4,000 if she has no money? Stephen answered that at about page 22 of the transcript. Stephen said she was chasing her ex-husband who had quote unquote completely ripped her off and she got an award after three years in court, which we represented her, after three years in court we got an award for the back-due pension. And that's where the money came from. But the judge didn't seem to get that. The judge said that she had a vastly superior non-marital estate. That's not true. Her non-marital estate was maybe $110,000 in bricks and mortar. Stephen had $97,500 a year and a pension from the state and from one of his unions, the cement union. That's an asset. The court did note, did it not, that the Respondent's gross monthly income exceeded the petitioner's, correct? The court made that observation. Did make that observation, yes. The court made a finding in paragraph 7 in the judgment, not the memorandum, but in the judgment, that my client's income was $29,000 and some change per year. That doesn't add up to me because the only evidence before the court was Exhibit 2, my client's affidavit, where she said I have $2,099 in maintenance. That's all she had. I don't know how the judge came up with $29,000 but I don't think that what her expenses were, for example, and I lost my train of thought if I may go back for a second. That happens here. The judge said, you know, you get 20 miles per gallon and she spends $200 on gas and therefore at 20 miles a gallon she's driving 1,600 miles a month. Well, that would be 80 gallons, it would be $2.50. There is nothing in this record that says the price of gas was $2.50. There is nothing in this record that says, first the judge is saying, I don't even know what car she drives, and then somehow the judge is coming up with 20 miles per gallon. And the judge used the affidavit, the earlier affidavit from December, actually dated August 22nd of 2018, filed on December 10th, to come up with a $200 figure but then she goes to a different affidavit and she's going back and forth before the affidavit. And I wanted to argue all this, where she keeps saying there's no testimony but I didn't want to, I didn't think that was relevant. I thought what was relevant was starting at page 12 of the judge's memorandum and it wanted to go back, I digress, at the closing we asked for permanent maintenance. Now I understand that the word permanent really means indefinite, and that it's always subject to defeasance under remarriage, prohibitation, and so on and so forth. We asked for $3,000 a month. Mr. Pribla, $3,000 a month on a permanent basis is what we asked for in the closing argument. Mr. Pribla argued that it should be the same $2,099. He argued that that's what the judge said at the pre-trial whereupon we made an objection as to referencing the pre-trial and the judge sustained our objection and he asked that it be for only 11 months. Apply the new statute, all she gets is 11 months based upon the duration of the marriage. Mr. Maragalli, how do we deal with the fact that, and is this something we should look at or is it relevant the fact that she was denied disability through Social Security? I think the court should not look at that. That was part of the, if I, Judge, if I may just go a minute or less further to get to that point in my argument, I was going to address that. Starting at page 12, I'm going to put my glasses back on, of the judge's memorandum opinion, in a single paragraph she makes some very, I think, serious statements which I don't think are supported by the law. Page 12, it says she was denied disability. From the court's observation, the only impairment to working is her wheelchair. That's number one. When the court says the only impairment as to her ability to work is her wheelchair, it disregards the testimony. In the Jackson case we cited, we made it very clear. The court is not free to disregard testimony which is neither impeached nor improbable or inherently improbable. But does the court have to accept all unrebutted testimony? It doesn't. It doesn't have to. The court has discretion. But that's a case law that the court does not have to accept even unrebutted testimony. There's case law that effect it. I'm not saying the court has to accept it, but we had better than unrebutted testimony. We had corroborating testimony. When the judge makes the statement about the only observation is her wheelchair, it ignores four pages of testimony in which my client testified as to the number of illnesses she had, the number of drugs she was taking, the pain in her joints, the fact that she had nausea, the fact that she inartfully stated, but truthfully, sometimes I have to pull over the car and have to toss my cookies. That's something we scripted for her, obviously. She was in constant pain. She couldn't get out of bed. She had a health care provider coming to her house to give her baths. She was not able to work and she testified it's not going to get any better. Now when I'm trying to prove that my client does not have the ability to work, my burden is a preponderance of the evidence. What we have here, and the judge said there was no doctor's notes, there was no medical testimony, there was no corroboration. But the husband basically... Exactly. That was my next point. When I said it's one issue, one day, one voice, the husband testified at the record page 17 and page 26. His wife, he was asked the question, do you believe your wife has the ability to work? No. He didn't say, I don't know. He said, no. Do you believe that your wife is disabled? He agreed and said yes. This is a man who is on disability. I think if anybody knows disability, it's Stephen Dorgan who's getting almost $100,000 a year. Now you're disinjecting. I'm inclined to agree with you. The fact that she was denied disability in another form doesn't dictate our result here. But let me ask you this. The trial court denied permanent man's finding, among other things, the petitioner's assets far exceeded the respondent's. Is that true? She made a finding that her assets, her premarital assets were vastly superior. But I think that finding is against the manifest weight of the evidence. Did they or did they not exceed? Pardon? Did they or did they not exceed the respondent's assets? I do not think so, Judge. Justice, the $100,000 a year pension payment, to me, that's an asset. That the husband's getting. The husband was getting. And so... What about the property? Wasn't there a disparity in property? He bought a house. What he testified to is he bought a house for $22,000. When he was asked, did you tell anybody about it? He said, well, I told my family. I wasn't really responsive, but we let it go. Because it wasn't really an issue. At the end of the day, I asked for half of that $22,000 back, and the judge inquired, well, what was his marital source that paid for that? I said, Judge, I can't answer that. She said, fair enough, Mr. Mirabelli. Going back to that house, that was it. There was $22,000 to be divided, and she gave my client $11,500 a month. She got her non-marital property, which they had about $110,000 of equity. But Stephen's got... He's 63 years of age. The judge made that finding. There was nothing in the record that the state was going to absolutely go broke and stop paying his police pension, the cement union was going to stop paying, or the federal government was going to stop paying SSDI. And I argue this in my closing to the court. This stream of income is an asset to Stephen. If Stephen lived even 10 years, it's a million dollars. So Stephen's got a million of income. My client's got $110,000 of bricks and mortar. She can't beat it. Stephen's got a boat and a Range Rover. My client's got a leased vehicle. So I don't agree when the judge said not once but twice in her findings, she had more non-marital assets. Stephen's pensions were acquired before the date of the marriage. They were non-marital. How many years were they married? Pardon? Pardon? How many years were they married? Just under five years. About four and a half years. And that obviously varies on the decision for permanent maintenance. Isn't that a factor? Well, in the stand... A long-term marriage versus a short-term marriage? It's one factor, but the court is to balance all of the factors. And I would argue, in the Stamp case, the Stamp decision was decided... Go ahead. Finish your thoughts. May I finish two thoughts if I may? Yes, you may. In the Stamp case, the appellate court held that the longer the maintenance went for, the more important the length of the marriage became. I don't know that I necessarily agree with that, but in this particular case, to answer your question now directly, and then if I could have two... I don't know if I should say... You're using up your time. Keep talking. I want to answer your question. I do not think the court should have given any weight to the finding of the denial of disability. It's like saying, if the police officer didn't give you a DUI ticket, then you must not have been drinking and driving. There was nothing in this record, other than Mr. Prisla asking, did you apply for disability? Yes. Was it denied? Yes. Did you have a lawyer? No. I didn't have one then. I have one now. What's the status of the appeal? She said she didn't know. How the court could give that any weight at all? Because she makes the statement, if she is unable to work, she would have been awarded disability. The largest word in English language, if... This is pure speculation on the trial court. If she is unable to work, she would have been awarded... She could have been denied disability for a procedural matter. She could have missed a deadline. She could have not filed a brief. I don't think the court should have done that. And then she compares that with Stephen saying, well, Stephen's disabled. Stephen receives Social Security and police disability. You can't compare that. You can't say Stephen's disabled. He gets it. She didn't get it. She must not be disabled. There are four pages of testimony and corroboration of her husband who lived with her. He said she's disabled. Now, counsel may argue, well, he said, I believe the question, do you believe she's disabled? And he said, yes. Well, do you believe it? You're testifying to it. At no point did they cross-examine my client and say to her, or did Stephen testify? Remember in this case, Stephen testified as my adverse witness. Valerie testified was cross-examined. Stephen never took the witness stand in his own case in chief. There is no evidence my client was out playing tennis. She was out dancing. She was bowling. She was golfing. None of that. They have every opportunity to challenge her testimony as to her illnesses. Thank you, Mr. Mirabelli. As soon as counsel is completed, then you'll have an opportunity for rebuttal. Thank you very much. I went a little longer. Go ahead. How do you pronounce your name? Andrew J. Resenich. If you wish to refer to me, just please call me Andrew. It's a lovely Eastern European last name. Thank you. You can proceed. Good morning, Your Honors. My name is Andrew J. Resenich. I represent Respondent Stephen Dorgan in this matter. To first open, Your Honors, I'd like to say that if you focus on one single factor out of the factors which are found in statute, they're called the 504 factors down at the trial court level. If you focus on one single factor, we're lawyers. We're very good at finding an issue. So you can always make an issue out of a single factor. But addressing the question, you talk about what the standard of review for this matter is. That is the abuse of discretion. We are talking about a maintenance award. We're not talking about findings of fact. We're talking about whether maintenance should be allowed or denied. So you have a woman who is up in years who obviously has many, many health issues. Undisputed. Mental health. Not, excuse me, not mental health issues. Medical health issues. And she is found to be not to get permanent disability. Is she going to get any better? Is she going to one day get a stand up and start walking to a job? Is the lupus going to be gone? Are all these other diseases going to be gone? Well, I can't speak to that, Your Honor. That is something that an expert witness would have to speak to. So you're saying that since, and in your brief you said, there were no witnesses, no medical witnesses testifying as to her. Correct. And the trial court did address that issue when there was an objection to her testifying whether or not she actually had the diseases. Even if we were to take for a fact that she does have the disease, which if we do, there was no evidence other than the belief testimony. I believe I have these diseases. The husband, too, confirmed it, didn't he? Well, that was his belief. And I do, I know I'm drawing a very fine line here, Your Honors, but there's a big difference in testimony when you say, I know she has this disease. I know this person because I was there at the doctor's office. But this is speaking to, do you, the actual question was do you believe she can work? No. That doesn't mean she can't. But he's lived with her for five years, correct? That is correct. So, I mean, if he thought she was faking or feigning these injuries, in a divorce case, isn't that something that would be brought out by the other spouse? Like, she's a liar? She's making all this up? Well, this isn't saying this isn't a question of making up the illnesses. Again, if we take for a fact that these illnesses are, that doesn't change whether or not she's able to work, able to support herself. The judge addressed this specifically when she said the only appearance of the inability to work, the only hindrance to the ability to work is the wheelchair. And that's what the court observed in the open proceedings. Let me ask you, the court had some questions about the credibility of the petitioner. How does that bear on our ultimate result? Well, with the credibility that ultimately goes to Your Honor, I would argue that it shouldn't affect the results here because of the standard of review, which is the abuse of discretion. But if we do talk about the trial court's findings in this one, then we I refer back to my opening statement, which was if you focus on one issue, you can find if you focus on one factor, you can always find an issue. So the court's credibility findings obviously favored your side of the case, did it not? It does, Your Honor. But I'm also The 504 factors are supposed to be weighed. And Your Honor, if you'll allow me to expound on something that I don't have any authority to say, but I believe that's the reason we have the abuse of discretion as opposed to the manifest weight of the evidence because there are so many factors that need to be weighed and the case law side says you have to strike a balance between those factors. Let me ask you one question. Sometimes the approach you take I'm sure all counsel and President Hill would agree to make your arguments before the trial court is different than making an argument up here. So tell me precisely what specific reasons, what the specific reasons are where we should uphold the trial court's decision in this case. Give us some specific reasons why we should do that. Well, Your Honor, there's the deferential standard, which is what I've argued since the beginning. And the question as well is one of the cases some of the case law that was pointed in the brief was in Raymarriage of Stanton which talked about that when weighing those factors, making those determinations what we're looking for is, is there a balance for those factors? Were they weighed accordingly? And I would say, Your Honor, intermingled with those factors is the necessary complication of the court setting as a trial effect. So in the trial court, they must take witness testimony along with other evidence. That's the affidavit. So again, are you telling me what specific reasons there are? What are the specific reasons? We know they have to consider the factors. We know they have to consider credibility. So how is that properly done here? Or why are you saying it is properly done? Well, Your Honor, if you read the entire memorandum decision, it goes through all of the factors. It says, this is what I find on these factors. Opposing counsels talk about, well, these are the issues, the specific issues within the memorandum decision. But you see that the factors, that's relevant. Am I misunderstanding the question, Your Honor? Justice Hudson is asking you tell us the factors in this case that you believe support your position. Let me find the mic. Are you going to speak for me? No, that's exactly what I was trying to do. Your Honor, if we're speaking for the Court, if we're looking at the assets, the Court specifically found that she had significant assets. The Court also found she was able to support herself. How was she supporting herself? That's a question, Your Honor, that the Court did address in the fact of look at the affidavit and it didn't add up to what was testified. The testimony was that I don't have the actual purchase if you look at the transcript. So, there was the credibility issue there on that one. Was there income coming in? Wasn't there some income somehow she was receiving? I believe so, Your Honor. Forgive me for that part of the record. I'm not entirely familiar. But I do believe that there was external income. And that income was not entirely divulged in the affidavit. The Court called it, I believe, mysterious income. Correct, yes. And so, the Court was never really able to figure. So, how does the Court, if it's mysterious and unknown, how does the Court then determine that in this case here, there was income? Because the Court doesn't seem to struggle with her finances. And that's why we have the issue about the credibility. So, where do you get, where can you now argue that she has income, sufficient income is not the same? Well, that's where the testimony comes in from my client, Mr. Jorgen, who said she was always able to pay her bills. He didn't know where that income was. And that's the fact of where we don't know where that income comes from. But there's no evidence saying that it didn't exist. Did she testify that she had some income coming in? I have to review the transcript, Your Honor. I do apologize on that one. If I had to hazard a guess, I do believe that she did say that she received some support from friends and family. But she did not say, I have mysterious income. Let me ask you this. Mr. Mirabelli takes issue with the assertion that the petitioner's assets exceeded the respondent's. He disagrees with that? What's your response to that position? Well, that's a finding of fact that the Court had to make. And it's based on the affidavits. It's based on the testimony. And we could look again at the manifest way of the evidence, which is there. But even then, that's just one factor in the 504 factors, is the relative positions of each partner. Did you try this case? I did not, Your Honor. That was tried by Mr. Wesley Priblo. I would just, if the Court, I should have prized the Court. Mr. Priblo is the one who signed the brief on this one. But I did write the brief and he reviewed it. So that's how I came into the picture. So, Your Honor, as we've So there's a lot of questions of fact. There's a lot of questions as to income and such. But in this appellate court, we have to look at what is being decided here. And it's a question of whether there was an abuse of discretion in maintenance. We could argue till the cows come home about whether the trial court made a correct actual finding. But if we look at the factors as a whole, the trial court did weigh those factors, weighed them appropriately, and awarded maintenance based upon the factors. And even without the deferential standard that we've cited, the evidence shows that there were questions of fact regarding whether the appellate would be able to take care of herself after the bonds of matrimony had been severed. The trial court weighed the evidence and it had to make a determination based on the evidence before it. Even if some of it was mysterious and unknown, it had to make a determination. That's what the trial courts do. So, therefore, we ask that you affirm the trial court's judgment in this matter. Thank you. You know you're not going to get up here and just go into this because we have questions. I'm having a hard time hearing it. I said, you know you're not going to get up here and just go into it because we have some questions. One of my questions. How long did your opponent testified or talked about her working while in a wheelchair before? How long has it been since she worked? It was, according to testimony, approximately five and a half to seven years earlier. It was almost seven years since she had her last job. Okay. And she testified to that. Okay. And there was some question about this income, this mysterious income. How was she supporting herself? If I recall the testimony, I recall her saying that she was getting some income. There is no testimony in regard to her getting income. The affidavit from 2018 showed $1,100 in gifts from family. Okay. And it showed $600 she was renting out a portion of her home to someone. That was in an affidavit which the judge went back and took judicial notice. The affidavit, and there was disputed testimony. Valerie says Stephen moved out right after the hearing in December. Stephen said he moved out in January. Starting in January, my client got $2,099 a month to help her pay her bills. And as this court probably well knows, when you fill out these 11.02 affidavits, you list what your expenses are. And you list maintenance on the house. You list the number for vacations because historically that's what you do. But when you're going through a divorce and there is not enough money to pay every expense, you defer the vacations. You defer the maintenance on the house. So it's not lying to the court because the court wants to know what is your standard of living? What did you have? In this particular case, counsels in his brief at page 7 of 17 says it is not disputed that Valerie is sick. And I went back and I looked while I was sitting there. You asked me a question. What are the problems to me? Number one, she considered the party's condition or circumstances on the day of the marriage. The judge did that. And at page 62 of the record, Mr. Pribla asked a question, was asking a question of relevance of the marriage to Mr. Capple, her previous husband. And the court said you asked her and she said she was unable to work on the date of this marriage. Right, Mr. Pribla. The court. She's unable to work now. I don't want to say I don't care, but I don't think it's relevant. Of course it's relevant. It's relevant whether or not my client has the ability to work. And the judge is saying it's not relevant. And Mr. Pribla is arguing in his closing argument, and I understand we have to argue it differently, but he's arguing to the judge she was unable to work in a wheelchair when he married her. She's unable to work. She's in a wheelchair now. Nothing's changed. Well, the testimony, she got lupus and lymphoma and additional drugs, but putting that aside, according to their argument, nothing changed. And that's what we argued in our brief, and I don't want to repeat all this. If a person is disabled on the day you marry them, and then five years later they recover because lupus has an uncertainty about it. You can recover from it. You can't go back and say, give me permanent maintenance because I was disabled when I married you. You have to focus on the date of the entry of the judgment. Two, the denial of her disability, I've already talked about. Three, the consideration of Valerie's appearance. The court made a statement that when Valerie appeared in court, Valerie was neatly dressed and groomed, makeup, hair, and clothing. Why is that relevant to whether or not a person get maintenance? We argue in our brief. We try to respect the court. We show up. I ask my clients to wear a suit and tie. I don't care if they're poor or not. Put on a suit and tie when you're going to come into court with me. I think it's respectful to the court. It's almost as if the court, again, like pulling out the 20 miles per hour. I have no idea where that any authority comes from to how she's dressed and does her hair look nice that day. Counsel, was there any other evidence that was presented other than the testimony of a plaintiff's disability? No. I apologize. I misspoke. Stephen agreed. We know both parties in this case agreed, but when you talk about her condition and her condition, the judge, since there was no other evidence presented other than her testimony, and we've already read the briefs and the record, the judge had decided this issue based on credibility. So, how do you make that? You want us to accept your argument, and your argument is based upon testimony that the judge said wasn't reliable. Your Honor, I respectfully disagree. The judge didn't say that testimony wasn't reliable. She specifically called her out and said, the testimony as to your finances is shady. It doesn't add up. I don't find you, your credibility is poor at best as to finances. She never questioned my client's authority, I'm sorry, credibility as to her testimony as to her illness, the effects on her. She never questioned Stephen Dorgan's credibility when he said that she was disabled and could not work. She never questioned Stephen's credibility when we showed that he had a piece of property he didn't list in his affidavit. He said the money was from savings. The judge said it came from his income, but the testimony is it was from his savings. No savings account had more than $441 at the time he filed the affidavit. So where was this $22,000 cash he came up with? Never faced the judge about that. So... Can you briefly summarize how the plaintiff's condition physical condition and medical condition changed from the date of the marriage until... What she testified to is that at the time of the marriage she had multiple sclerosis. She was in a wheelchair and she was not working. And I know she also testified that Stephen promised to take care of her but I don't think that's really relevant. Stephen said I promise to take care of you and she testified to it it's obviously relevant to her, but I don't think it's relevant to the court. She acquired lupus during the marriage. She acquired lymphoma. She required a number of additional drugs. She finally had someone coming in to take care of her three times a week, paid for by the state. She was wheelchair bound. And while I cited to the bracket case, and I would like to conclude if I may on the bracket case, the judge tried to distinguish bracket by saying, well you know, back in 20 years ago when bracket was decided it was common in McHenry County if you had a 20 year marriage you would get permanent maintenance. But we have a new statute. Well, there is no evidence on record what was common 20 years ago in 1995 when bracket was decided, but the judge sued that in. Then she talks about the length of the marriage. This is shorter. That was longer. But in bracket there was no doctor to testify. There was no collaboration. The husband in that case also agreed that his wife had an illness and the judge gave temporary maintenance and they wanted at least reviewable or permanent maintenance. And just the judge in this case specifically said well everything else is dicta. If you read bracket the court said this is a clear case for permanent maintenance. So the plaintiff was not working on the date that the party was married? At the time of the marriage she was not working. I don't know the date of the engagement. That's not on the record. I just wanted to clarify the time of the marriage. At the time of the marriage she was not working. She was in a wheelchair. But her disabilities, I would add that her sicknesses, there were two more illnesses which were acquired. The argument is they increased substantially from the time of the marriage to the end. Is that substantial? Yes, sir. Mr. Mirabelli, thanks for your arguments. Counsel, thank you for your arguments. We will take this case under consideration and render a decision in due course. We thank you very much for your time here today and your interesting arguments. Thank you all for your patience. Sure.